May it please the court, my name is Wayne Young. I represent Mr. Fuller. Mr. Fuller was convicted of a marijuana conspiracy and sentenced to 292 months in prison. Two issues we raised on appeal are the wiretap issue and the Feretta issue. It is undisputed the government made an error in its wiretap application. The first one, to judge fees, the proposed order prepared by the government included information that the government was authorized to receive text messages. And that was not true. They had sought permission to obtain text messages from the Justice Department and had been denied. Nevertheless, they included it in part of their order. Now, are text messages considered oral or wire communications? They're not oral, your honor. It's an interesting dispute whether they're wire or electronic. It seems to be that they're generally considered electronic. However, there's really no reason to distinguish them from wire communications. And our argument is they should be subsumed within that. If I receive a phone call, the government can't intercept that without authorization. The same should apply if the same phone receives a text message. So there's really no basis in... in the chain? Your honor, the government relied on two outdated authorizations. They had been rescinded and the government submitted those in support of their application. But we do concede that they were replaced subsequently by valid authorization. So technically speaking... to those who authorized the wiretaps, correct? Correct, your honor. Our dispute is not with that. It's a technical, I think, a minor deficiency. We identified it in the brief. Our complaint is with the stating to the court in application number one that they were authorized to receive text messages when they had been denied permission specifically for text messages by the Department of Justice. The second was the failure in the second application. This was the search warrant application to Judge Turchin. The failure to disclose that they had illegally obtained and reviewed 72 text messages pursuant to the first illegal order. However, Murray v. The United States suggests that information received from an illegal source is considered to be cleanly obtained when it is arrived through an independent source. So in this particular situation, Murray says, information is obtained from an independent source when the court finds, one, the decision to seek the warrant was prompted by a review of the illegally obtained information or the decision to issue the warrant was affected by the illegal information, which I can't find in this record, either of those first or second reasons. I don't find anything that the decision to seek the warrant was prompted by a review of illegally obtained information and I don't find any decision to issue the warrant affected by the illegal information. Well, as to the first, Your Honor, the information they sought with the second warrant was the very same for the most part, 72 text messages that they had illegally obtained with the first warrant. So it certainly, we believe, satisfies that contest. Did the court have any knowledge of any illegally obtained information? You're talking about application number two, the search warrant to Judge Churchill. Those messages were not disclosed to the court that they had obtained. Our position is that the fundamental illegality of how they obtained the first 72 message should have been disclosed to the court. Your Honor, was the court prompted by any review of the 72 illegally obtained text messages in its decision? No, Your Honor, but they also didn't consider in their decision the fact that those messages had been illegally obtained and had been reviewed. They neglected to tell the court that they were asking for the very same messages that they had already received and reviewed. Counsel, wasn't there still, putting those messages aside, enough evidence to obtain the search warrant anyway? No, Your Honor, those messages, our position is, were essential to the search warrant application. There were 72 messages in which coded language, to be sure, Mr. Fuller was talking to other persons alleged to be members of the conspiracy. And those messages, several of them, were introduced at trial and relied on by the government. Well, I guess that's an easy thing to say, but the bottom line is, I think my colleague hits the point, the search warrant in the second wiretap application needs to lack probable cause with other evidence if we're to determine that the receipt of the 72 text messages made any difference. So if you look at the search warrant in the second wiretap application, I'm still having a tough time seeing why it wouldn't have lacked, wouldn't have had probable cause. Our fundamental disagreement, Your Honor, is about not the existence of probable cause, but the failure to disclose the illegality and then the subsequent use of the evidence obtained pursuant to that illegality that was persuasive evidence against my client at trial. I'd like to go back to what Judge Smith was talking about, evidence obtained from an independent source. The information obtained lawfully from the first wiretap, as I understand it, indicated that Fuller was sending and receiving text messages in furtherance of drug trafficking because the affidavit already reflected sufficient legally acquired evidence of probable cause. Why wasn't this sufficient? We don't believe it was an independent source, Your Honor, because the government obtained evidence that was so intricately part of the illegality of how they obtained it that all of that has to be excluded from the probable cause equation. And absent that, those messages, there weren't at that time probable cause. Perhaps if they had gotten the subsequent warrant, they would have come up with it. But to exclude those 72 messages, we believe eliminates the probable cause. Are you familiar with the Seventh Circuit case of U.S. v. Gonzalez? I am not, Your Honor. I'm sorry. Then I will not pursue that. Turning to the Feretta issue, there are several related Feretta issues in this case, but the fundamental one is that Mr. Fuller's motion to represent himself was equivocal because it was contingent on the appointment of advisory counsel twice in the Feretta colloquy. Mr. Fuller said, I will represent myself, but I want my then-retained attorney to continue as advisory attorney, and the trial judge ordered the counsel to serve as advisory attorney. But it wasn't on condition that I have advisory counsel. I wish advisory counsel. Isn't that correct? He didn't waive it on condition that I have advisory counsel. He didn't say the words on condition, Your Honor, but he did say twice that I want to represent myself if my counsel is appointed as advisory counsel. And our position is that was contingent. And if it is contingent, under the Mendez-Sanchez case, the court proceeded in allowing Mr. Fuller at that point to proceed pro se because it had been an equivocal pro se motion. Okay. You're suggesting this is equivocal. What is my standard of view on appeal? What is the standard of view that I have on appeal for the decision about equivocality? De novo, Your Honor. That's a fundamental right to counsel issue. There's a fundamental right to counsel, but we're not talking about whether he has a fundamental right to counsel here. We're talking about whether he has a fundamental right not to have counsel, and that's what he suggested he was going to do. And now when we decide whether this other little phrase he said, I'd like to have other counsel, is a part of his right to proceed without counsel or not, is that also de novo? If you're only talking about whether advisory counsel should be appointed to a person without counsel, the standard of review in that case is abuse of discretion. But when the fundamental question is, is this Feretta waiver valid because of this question of equivocation, then at that point the standard of review is de novo because it goes directly to the Sixth Amendment. So are you arguing that the defendant did not knowingly and intelligently waive his right to counsel? I am, Your Honor. Now, we conceded that the warnings that the court gave to Mr. Fuller were adequate about the dangers of representing yourself. It's not a good idea. But the other part of the Feretta warnings is it has to be unequivocal, and by twice asking for advisory counsel, that fundamental, the first Feretta waiver was invalid. Even if it was valid, it became null when advisory counsel was permitted to withdraw a month later for the same reasons. He had said that advisory, I'll represent myself if I have advisory counsel. If the court allows advisory counsel later to withdraw, then his initial waiver is null avoid. At minimum, the court should have renewed the Feretta warnings at that point. Well, but you're really running against Hanses. Now, this is an Idaho pronunciation. I'm not sure it's the right one, H-A-N-T-Z-I-S. Hanses says if we have a properly conducted Feretta colloquy, we need not review the colloquy in subsequent proceedings. Well, I disagree. That's what the case says, so you can disagree with it if you want to, but that's what our court said. It also says, Your Honor, that there is an inquiry whether intervening events substantially change the circumstances. There are no intervening events here. He had his right to counsel. He had his chance to have his Feretta hearing before. All you're suggesting is that it was absolutely de novo review as to whether this idea, well, I'd like to have advisory counsel, means that he had his Sixth Amendment rights violated in the first Feretta hearing. But I guess I'm still having a tough time understanding why one needs a new Feretta hearing when there's nothing else changed except his counsel withdrew. That's the change in circumstances we're referring to. The judge is facing a complex conspiracy trial, and he's gone from representing himself with a retained advisory counsel to now representing himself shortly before trial. And that is a substantial change in events sufficient under Hansen's to trigger once again the Feretta warnings. Counsel, do you want to say anything about counsel at sentencing? Yes, Your Honor. Mr. Fuller made it clear at sentencing after he was convicted that he once again wanted counsel appointed. And it was significant because there was substantial discretion in the judge to sentence him below the guidelines pursuant to 3553. He was sentenced to 292 months. There was a mandatory minimum of only 240. So there were at minimum 52 months at stake. He requested counsel unequivocally, and the court denied it. And arguably, counsel could have aided him in challenging perhaps the quantity of marijuana. So there was a lot at stake at sentencing. So what is the standard to review again? I hate to bring you back to that, but it seems to me I have to apply the law. Mennefield suggests we will not deny defendant the right to counsel during sentencing unless compelling circumstances require us to do so. Then they say what that is. Extraordinary circumstance, or the government can show that the request was made in bad faith. Isn't that exactly what the district court was inquiring into? Isn't that exactly what the district court was determining, whether the request was made in bad faith? Well, the government argued it was made in bad faith, Your Honor. But here's a gentleman facing sentencing, an enormous sentencing. He had been polite and respectful the whole time representing himself, and he was just asking the court for appointment of counsel. Let me ask you this. What standard to review do I give to the district court decision in making the decision whether it was bad faith or not?  So, I've got to find that the trial court was clearly erroneous in determining that this was just a bad faith request. And you're suggesting that when he filed, he first asked for, he wanted to have preparation for filing motions for new trial, motion for judgment of acquittal. They were denied. Then he wanted delay another way. That was denied. Then he requested counsel. He didn't request counsel immediately. He requested counsel at the hearing on sentencing. And his only reason he gave was, I have obtained informa pauperis status, which retaining informa pauperis status was an absolutely ridiculous reason. Because if you can pay for it and you don't have counsel, then going informa pauperis doesn't mean that you should have counsel. That didn't have any. So, I'm looking at everything this defendant said in order to determine whether the district court was clearly erroneous in finding this was bad faith. Not clearly as erroneous in the fact finding, Your Honor. We submit on that. But in the denial of the fundamental right to counsel from start to finish, our position was that it should have been reviewed de novo because of denial of the Sixth Amendment. Does the Robinson case tell us anything in this area? Robinson versus Ignacio, Your Honor, we believe supports our position that counsel should have been appointed at sentencing. But on the bad faith issue? I don't recall the fact sufficiently, Your Honor. All right. Thank you, counsel. Your time has expired. We'll hear from the government. Your Honors, may it please the Court, Christopher Pelham, assistant United States attorney for the appellee. Counsel, I hate to interrupt you, but on this last issue of bad faith, isn't it the government's burden to prove bad faith? I hate it. And what evidence did you submit of bad faith? At the sentencing hearing, Your Honor, what government counsel emphasized was that the defendant already requested several continuances of the sentencing hearing. The sentencing took place in early December 2009. The verdict had been handed down in August of 2009. The court had already delayed the sentencing hearing itself and had delayed the hearing on post-trial motions. So there are continuances granted on both sides to the defendant. What government counsel emphasized, I believe, at the sentencing hearing, and emphasizes on appeals, certainly, is that when the defendant requested IFP status from the district court, first, the defendant was, as the district court found, noncompliant in satisfying the requirements of the IFP affidavit. And Judge Walter reminded the defendant several times that the defendant had not discussed the full disposition of his assets to the court's satisfaction. So it took several months just for the defendant to qualify for IFP status under the affidavit requirements imposed by the district court. More importantly, when the defendant was requesting IFP status, he was only requesting it as to the production of transcripts. This was an issue right after trial. The defendant said, I can't bring post-trial motions until I get all of the transcripts reproduced at the government's cost. And the court said, well, I can't do that for you unless you qualify for IFP. And even then, it's burdensome. So it wasn't until sentencing, again, four months after verdict and after multiple continuances of the sentencing hearing, that the defendant suddenly shifted the IFP discussion from the production of transcripts and briefing on post-trial motions to counsel. All right. But he said that I need IFP status so I can get the transcripts, so I can decide what to do after the trial, which would be at the time of sentencing. So there was IFP did have something to do with that. And then he finally gets it. And very shortly after he gets it, at that time, he requests counsel. This is true. But what I would emphasize respectfully, Your Honor, is that the district court's discussion with the defendant on the production of transcripts, I think, is very critical. The district court said, you can't go on a fishing expedition just by requesting a week's worth of trial transcripts that you can pick and choose your issues. In fact, the district court multiple times admonished the defendant to identify beforehand what witnesses were problematic, what exhibits were problematic. And I was trial counsel in 2009. I actually, during one of the post-trial hearings, offered to request production of transcripts on the government's behalf if I knew what it was the defendant was targeting. But how did he know without the transcripts? Because there was a lengthy discussion with the court, Your Honor, about what it is exactly the defendant was trying to challenge. The trial was lengthy, but because it was a drug trafficking conspiracy and a gun possession case, there weren't a lot of civilian witnesses. The court emphasized that, look, the defendant had been present, taking notes during the length of the trial. It would have been easy for the defendant to discreetly identify what issues were important for post-trial. What do you do with the Robinson case? In the Robinson case, Robinson v. Ignacio, the defendant actually, the court found that the district court's finding of bad faith was erroneous because the district court believed that the defendant's first request for sentencing counsel was at the sentencing hearing itself. This court held or observed that the defendant actually made a request some week before the sentencing hearing through a letter to the bench. But I thought Robinson held that it was an absolute right. In other words, you can waive counsel at the guilt phase, but you have an absolute right to have counsel at the sentencing phase, notwithstanding the fact that you had previously waived. This is so, Your Honor, but as this court has held in Hansis and in Kelm, that right can't be used to effect undue delay. It can't be used by a defendant to suddenly occasion a bad faith request for slowing down the judicial proceedings. It worries me that in Manapfield it suggests the simple inconvenience of continuing a post-trial sentencing hearing is not enough to deny a request for counsel. So how do you distinguish that or what happened here from that particular phrase? Because to me, we're really talking about undue delay and whether undue delay is, in fact, bad faith. We're talking about the bad faith of the particular individual. But in Manapfield it says the simple inconvenience of continuing the post-trial sentencing hearing is not enough to deny the request for counsel. Why is this not a simple inconvenience? Because what's important here, Your Honor, is that there was an appropriate finding of bad faith and the delay would have been undue. The disposition of the sentencing hearing relative to the trial is what really makes a difference here. Again, the trial had been almost five months before the sentencing hearing. The defendant never requested counsel in writing, didn't comply with his IFP declaration requirements after multiple admonitions from the district court. But he did get it, ultimately. He did, about a week. And it was very shortly thereafter he requested counsel. Yes. But what I would emphasize, Your Honor, is that, again, that was only after multiple admonitions from the district court to get the IFP application right. And it took four months, almost four months, for the defendant to do so. This indicated he needed the help of counsel, doesn't it? Not for the very specific factual inquiry that the declaration demanded. In this case, all the defendant had to do, and, in fact, the IFP discussion came up during trial itself as well, Your Honor, because the defendant wanted the government to help him pay for the subpoenaing of witnesses. And there the district court, all the defendant had to do was tell the district court what had happened to a large balance of home equity that was left from the inheritance of his grandmother's estate. All the defendant had to do was tell the district court, and this is borne out multiple times in the record, what happened to that money. In fact, the district court asked the defendant to specify what wine, women, and song the defendant had disposed those proceeds on. He didn't need counsel to tell the district court what had happened to that money, and the district court reminded him repeatedly this was a sealed, it would have been a sealed filing, and it certainly didn't require any legal discussion. It's for that very specific reason, Your Honor, again, the fact that the defendant was dilatory in returning his own declaration for IFP status, the fact that the defendant did not request counsel until orally doing so at the sentencing hearing itself several months after trial, and the fact that the defendant, up until the sentencing hearing, did not invoke any need for IFP monies to go for counsel, that the government respectfully asserts that this was a bad case. Counsel, do you agree with Mr. Young that it's clearly erroneous standard on this, or is it abuse of discretion? Your Honor, I believe it's a mixed question. The district court's fact-finding, the district court's finding of fact that this was a bad faith request intended to affect undue delay, the government believes is accorded deference in the form of the clearly erroneous standard. But the district court's decision therefrom should be reviewed for abuse. And under both reviews, Your Honor, the government believes that the district court should be upheld. As to the other issues, Your Honors, as to specifically the Title III issues, the government respectfully asserts that there is no moment to the fact that the government incorporated an untimely delegation order in either of the two wiretap applications to the district court. While this court has not specifically ruled on this issue, other circuits have, and certainly this court's opinions in Swan and Callum, as well as the Ninth Circuit's opinions in Giordano and Chavez, are telling. You know, what bothers me about this is that whether or not we should conclude that the unlawful acquisition of the 72 text messages prompted the government to file the search warrant for them the very next day. Isn't that a very close connection that suggests that they relied upon those unlawfully obtained text messages? Respectfully, I don't believe so, Your Honor. And what's important there is that after the agent unlawfully acquired those text messages through Sprint, she contacted the supervising AUSA, who told her immediately that the first order of authorization did not allow for the interception of text messages. So she put them in an envelope. She sealed them. The next day. The next day. But the reason why the AUSA then approved the search warrant is because both the agent and the AUSA had already been discussing the acquisition of text messages before the first application was even sought and during the course of interception itself. What's important here, Your Honor, is that as the agent's declaration makes clear to the district court, and, in fact, there's an email to corroborate this, the agent had told the AUSA just through the review of toll records before interception had begun that it looked as though the defendant was using text messages to facilitate drug trafficking. And when the AUSA responded that electronic interception required separate and special OEO approval, the case agent said, well, then maybe we should amend our order at some point forward once we determine what he's saying on the phone. The agent knew. Both the agent and the AUSA had discussions about text interception before interception started. And this is why the district court properly found that there were the two pawns in Murray for independent source. Well, and as I understand it, we're really guided by Murray on one other issue, and that is the determination of whether the warrant was sought based on the review of illegally obtained evidence is a factual determination upon which we review for clear error, correct? Yes, Your Honor. And what's relevant here is that the defendant did not challenge the agent's factual assertions in the declaration that the government submitted on this issue. The defendant also didn't ask for a Franks hearing or for cross-examination of the agent to determine the veracity of her assertions. Those facts were left undisputed. And so the district court had a very firm record that is reviewed, as Your Honor has emphasized, very deferentially in this particular case. Once the district court found that both Murray pawns were satisfied, then the admission of those texts were proper. And in any event, the text messages did not play a supreme role during the course of the trial. There was other evidence that the government presented in support of its conviction. If we exclude the information of the 72 messages, which I understand was excluded, in the wiretap and search warrant applications, do the applications meet the burden of showing that probable cause remained? Yes. The government did not disclose the fact of the 72-text seizure within its search warrant application to Magistrate Judge Turchin. And the reason for that was, as AUSA Childs makes clear in his declaration, was to keep the probable cause discussion separate from the improper acquisition. Magistrate Judge Turchin properly found probable cause because there were toll records showing that the defendant was texting from that phone, and there were at least two intercepted conversations where the defendant said, I'm going to send a text message to a co-conspirator, to paraphrase. The fact of the omission of the acquisition from that search warrant, the government also respectfully believes, Your Honors, is of no moment. This court observed in DICTA, in the Whitford case, that it's probably the best practice for the government to disclose a prior improper acquisition. But it isn't necessary, and there the court upheld the introduction of evidence where the government left out a prior search. This court also upheld the introduction of such evidence under similar circumstances in Romero. I'd also emphasize that in the Murray case, the Supreme Court found or observed that the government did not disclose a prior improper entry into a premises, an unwarranted entry into a premises. And this also did not affect the admissibility of that evidence. I'm happy to hear you say it probably would be best to disclose it. Yes, yes. But as the government emphasizes in its brief, Your Honor, this was an observation made by the court in DICTA. And again, the more central question is whether or not the unlawful acquisition played any role in Judge Turchin's decision. And here, because of that separation, we know that it did not. With my remaining time, Your Honors, I'll just address very briefly the Feretta issue. The government respectfully asserts that the defendant's waiver of his Feretta rights were unequivocal and unconditional. It's true that multiple times during the course of the Feretta hearing, the defendant said, I would like to have the attorneys I paid for remain with me at counsel table. But on at least three occasions, Judge Walter reminded the defendant that the question of whether or not he wanted to represent himself was separate from the question of whether or not the court would appoint advisory, standby, or second counsel for a defendant. So is my review of that particular decision de novo? It's a mixed question, Your Honor. Well, mixed question how? I mean, that sounds good, but tell me how. Do I review whether he waived any right to have an attorney at his table de novo? Or what do I do? The factual finding by the district court that the defendant's waiver was unequivocal and unconditional is reviewed for clear error, Your Honor. It's a clearly erroneous standard because it is a finding of fact by the district court. The next question from that, whether or not the court properly waived or found that the defendant waived his rights, is reviewed de novo. So the finding of fact is whether or not the waiver was equivocal. That is a courted factual deference to the district court. Thank you, counsel.  Thank you, Your Honor. The case just argued will be submitted for decision, and the court will hear argument next in United States v. Anecu.
judges: Nelson, O'scannlain, Smith